UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUBIGES LOPEZ,<br><br>  Plaintiff,<br><br> v.<br><br> MARTIN BANS,<br><br>  Defendant. | No. 16-cv-00340-DAD-JLT<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. No. 19) |

This matter came before the court on September 9, 2016, for hearing of defendant's motion to dismiss under Federal Civil Procedure Rule 12(b)(6). (Doc. No. 19.) Attorney Anthony DeMaria appeared on behalf of defendant Martin Bans, and attorney William Romaine appeared on behalf of plaintiff Edubiges Lopez. For the reasons stated below, the defendant's motion to dismiss will be denied.

FACTUAL BACKGROUND

On March 9, 2016, plaintiff Edubiges Lopez filed a complaint against defendant Martin Bans. (Doc. No. 1.) This action now proceeds on plaintiff's First Amended Complaint ("FAC"), filed June 26, 2016. (Doc. No. 12.) In her complaint, plaintiff asserts one cause of action under 42 U.S.C. § 1983, alleging retaliation in violation of her First Amendment right to free speech. (*Id.* at 10.) Plaintiff seeks economic and non-economic damages, punitive damages, and attorneys' fees. (*Id.* at 12.)

In her FAC, plaintiff alleges the following. Delano Unified School District ("the District") is a school district that operates schools including Cecil Avenue Math and Science Academy ("Cecil"). Between September and December of 2013, the District received federal grant money from the U.S. Department of Education. (*Id.* at 3, ¶ 7.) These grant programs conditioned eligibility for funds on the District meeting certain school attendance requirements. (*Id.* at 3, ¶ 8.) The District used the federal money in part to fund an after-school program at Cecil. (*Id.* at 3, ¶ 9.)

Plaintiff Lopez and defendant Bans were both District employees. (*Id.* at 2, ¶ 4.) Plaintiff managed an after school program at Cecil, while defendant Bans served as District Director of Human Resources from 2013–2014, and was responsible for supervising plaintiff. (*Id.* at 3, ¶¶ 5–6.) Plaintiff's sister was also a District employee. (*Id.* at 5, ¶ 16.) During the course of her employment, plaintiff became aware that the District used federal grant money to fund the after-school program at Cecil to which she was assigned. (*Id.* at 3, ¶ 9.) In September 2013, plaintiff's District supervisors instructed her to certify school attendance in a way plaintiff believed was inaccurate. (*Id.* at 3, ¶ 10.) Plaintiff learned from other employees that the District needed to show certain attendance levels to retain federal funding. (*Id.* at 4, ¶ 11.) Plaintiff became concerned that she was being instructed to make fraudulent certifications that were resulting in federal grant money being overpaid to the District. (*Id.* at 4, ¶ 12.)

In November and December of 2013, plaintiff began to verbally express her concerns about school attendance certification to other District employees, and to her certified bargaining unit representative. (*Id.* at 4, ¶ 13.) District supervisory personnel met with plaintiff on November 5, 2013, and in January 2014, to discuss the policies with regard to certifying attendance. (*Id.* at 4–5, ¶¶ 14–15.) District personnel told plaintiff that the policies were mandatory and that employees not following the policies would be disciplined. (*Id.*) In the January 2014 meeting, District personnel also ordered plaintiff to alter student attendance records in preparation for inspection by a federal program monitor. (*Id.*)

In February 2014, plaintiff was absent from Cecil due to illness. (*Id.* at 6, ¶ 16.) Plaintiff asked her sister to deliver a physician's absence note to the District on her behalf, and to also

2

1  remind the Cecil attendance clerk to provide staff with a list of students attending a field trip on
2  that date. (*Id.* at 6, ¶ 16.)  When plaintiff's sister carried out plaintiff's instructions, the Cecil
3  attendance clerk instead provided plaintiff's sister with a blank attendance sheet, which plaintiff's
4  sister then handed to Cecil staff. (*Id.* at 5–6, ¶ 16.)

5  Upon learning that plaintiff's sister had received the Cecil attendance record, defendant
6  Bans became concerned that plaintiff was attempting to remove Cecil attendance records from the
7  school to publicly disclose concerns about District attendance record policies. (*Id.* at 6, ¶ 17.)  To
8  prevent plaintiff from airing her concerns, defendant Bans terminated plaintiff's sister from her
9  employment with the District. (*Id.* at 6, ¶ 18.)  On February 18, 2014,[1] defendant Bans and other
10 District management personnel again met with plaintiff to discuss attendance certification
11 policies. (*Id.* at 6–7, ¶ 19.)  At the end of the meeting, defendant notified plaintiff in writing that
12 she was being placed on administrative leave, with pay, pending an investigation into her possible
13 misconduct. (*Id.*)  The letter did not indicate the nature of the alleged misconduct or the source of
14 the allegations, and it noted that plaintiff's placement on administrative leave was not a
15 disciplinary action. (*Id.*)

16 On March 13, 2014, defendant again met with plaintiff and this time asked for her
17 resignation. (*Id.* at 7, ¶ 20.)  Defendant did not specify why plaintiff was being asked to resign
18 but indicated that if she did not, the investigation into her alleged misconduct would continue and
19 she would face termination and possible criminal prosecution. (*Id.*)  Plaintiff alleges that this is
20 the first time she understood defendant Bans intended to act to dissuade her from speaking out
21 about the falsified attendance records. (*Id.*)  Plaintiff did not resign. (*Id.*)  Instead, following the
22 March 13, 2014 meeting, plaintiff obtained a note from her physician placing her on stress-related
23 leave and never returned to her job. (*Id.*)

24 /////
25 /////
26

27 [1] The FAC alleges that this meeting took place "on February 18, 2106." (Doc. No. 12 at 6, ¶ 19.)
    As plaintiff pleads this fact in the context of other allegations occurring in early 2014, the court
28 construes the FAC to allege that the meeting took place on February 18, 2014.

On August 4, 2016, defendant filed a motion to dismiss the FAC.  (Doc. No. 19.)  On August 24, 2016, plaintiff filed an opposition to defendant's motion to dismiss.  (Doc. No. 22.)  Defendant filed a reply on August 30, 2016.  (Doc. No. 23.)

## LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Novak v. United States*, 795 F.3d 1012, 1017 (9th Cir. 2015).  It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

Defendant moves to dismiss the FAC on the following two grounds:  (i) plaintiff's § 1983 claim is barred by the applicable two year statute of limitations; and (ii) plaintiff's claim is inadequately pled. (Doc. No. 19.)  The court addresses both of defendant's arguments below.

/////

/////

I.    **<u>Statute of Limitations</u>**

"[I]t is well-settled that statutes of limitations are affirmative defenses, not pleading requirements." *Wyatt v. Terhune*, 315 F.3d 1108, 1117–18 (9th Cir. 2003).  The defendant, therefore, bears the burden of proof as to each element of a statute of limitations based affirmative defense.  *See Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir. 1993).  A plaintiff is not ordinarily required to plead around affirmative defenses.  *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993).  However, a "claim may be dismissed as untimely pursuant to a 12(b)(6) motion '. . . when the running of the statute [of limitations] is apparent on the face of the complaint.'" *U.S. ex rel. Air Control Technologies, Inc. v. Pre Con Industries, Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)); *see also Ritchie v. United States*, 210 F. Supp. 2d 1120, 1123 (N.D. Cal. 2002) ("Where the facts and dates alleged in a complaint demonstrate that the complaint is barred by the statute of limitations, a Federal Rule of Civil Procedure 12(b)(6) motion should be granted."). Here, defendant argues that plaintiff's § 1983 claim is time-barred based on the allegations of plaintiff's FAC.

"In determining the proper statute of limitations for actions brought under 42 U.S.C. § 1983, we look to the statute of limitations for personal injury actions in the forum state." *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004).  California's two year statute of limitations for personal injury actions thus governs plaintiff's § 1983 claim.[2]  *See* Cal. Civ. Proc. Code § 335.1; *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007).  However, federal law determines the time of accrual for civil rights claims. *See Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999) (citing *Elliott v. City of Union City*, 25 F.3d 800, 801–02 (9th Cir. 1994)).  Claims under § 1983 typically accrue when the plaintiff knows, or should know, of the injury that is the basis of the action.  *Fink*, 192 F.3d at 914.  Once a claim accrues, the limitations period begins to run, and any suits filed outside the limitations

---

[2] Prior to January 1, 2003, the limitations period for personal injury actions was one year. California Senate Bill 688 amended the relevant statute of limitations to two years, effective January 1, 2003.  *See* S.B. 688, ch. 448, § 3 (Cal. 2002).  As all relevant factual allegations here occurred after 2003, a two year statute of limitations period applies to plaintiff's § 1983 claim.

period will be time-barred. *See Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012); *see also M.M. v. Lafayette School Dist.*, 767 F.3d 842, 858–59 (9th Cir. 2014).

After a § 1983 civil rights claim accrues, certain acts taken thereafter can start a new clock for the filing of a complaint alleging those acts. Thus, an independently wrongful "discrete act" will trigger the accrual of a new claim and the start of a new limitations period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (discussing discrete acts in the context of a Title VII action, and finding that the limitations period restarts "even if there was a prior, related past act"); *see also Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 828 (9th Cir. 2003) ("Although *Morgan* was a Title VII case, and the present case is a § 1983 action, we have applied *Morgan* to bar § 1983 claims predicated on discrete time-barred acts."). As the Ninth Circuit has advised:

> So long as an alleged violation . . . is a discrete and independently wrongful discriminatory act, it causes a new claim to accrue and a new limitations period to run. A claim . . . will not be untimely merely because similar, even identical, violations . . . occurred outside the statutory period.

*Ervine v. Desert View Regional Medical Center Holdings, Inc.*, 753 F.3d 862, 870 (9th Cir. 2014); *see also Pouncil*, 704 F.3d at 581; *Mansourian v. Board of Regents of the Univ. of Cal. at Davis*, No. CIV. S 03-2591 FCD EFB, 2011 WL 1897428, at *2 (E.D. Cal. May 18, 2011) (a discrete act is "a separate, actionable unlawful practice that is temporally distinct.").

Thus, in the employment context, "a single act by an employer adverse to an employee's interests, such as a discharge, layoff, or failure to transfer or promote, begins the running of the statute of limitations." *London v. Coopers & Lybrand*, 644 F.2d 811, 816 (9th Cir. 1981), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012); *see also Draper v. Coeur Rochester, Inc.,* 147 F.3d 1104, 1110 (9th Cir. 1998) (finding plaintiff's Title VII claim timely filed where the date of her constructive discharge from employment fell with the period of limitations); *Tillery v. Lollis*, No. 1:14-cv-02025-KJM-BAM, 2015 WL 4873111, at *13 (E.D. Cal. Aug. 13, 2015) ("Discrete acts include . . . termination, failure to promote, denial of transfer, or refusal to hire") (quotations omitted). In contrast, a delayed, inevitable consequence of a past injury suffered will not cause accrual of a new claim or the start of a new limitations

6

1  period. *Pouncil*, 704 F.3d at 581; *see also Stanley v. Tr. of Cal. State Univ.*, 433 F.3d 1129, 1134
2  (9th Cir. 2006) ("The proper focus is upon the time of the discriminatory acts, not upon the time
3  at which the consequences of the acts became most painful.") (quoting *Abramson v. Univ. of*
4  *Haw.*, 594 F.2d 202, 209 (9th Cir. 1979)).

5  Moreover, under the continuing violation doctrine, the accrual of a claim may be extended
6  "if a continuing system of discrimination violates an individual's rights 'up to a point in time that
7  falls within the applicable limitations period.'" *Douglas v. California Dept. of Youth Authority*,
8  271 F.3d 812, 822 (9th Cir. 2001) (quoting *Williams v. Owens–Illinois, Inc*., 665 F.2d 918, 924
9  (9th Cir. 1982)).  Under this doctrine, "a systematic policy . . . is actionable even if some or all of
10 the events evidencing its inception occurred prior to the limitations period." *Sosa v. Hiraoka*, 920
11 F.2d 1451, 1455 (9th Cir. 1990) (quoting *Williams*, 665 F.2d at 924); *see also Carpinteria Valley*
12 *Farms, Ltd.*, 344 F.3d at 829 n.3 (noting that although the Supreme Court in *Morgan* "invalidated
13 the 'related acts,' method of invoking the continuing violation doctrine," it "declined to address
14 the 'systematic pattern-or-practice' method"). However, because discrete acts are considered
15 independently wrongful conduct, they are not subject to the continuing violations doctrine. *RK*
16 *Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002). Discrete acts are thus not
17 actionable if time-barred, even if related to acts alleged in a timely filed claim. *RK Ventures, Inc.*,
18 307 F.3d at 1061; *see also Eng v. Cty. of Los Angeles*, 737 F. Supp. 2d 1078, 1098 (C.D. Cal.
19 2010) ("Under federal law, a retaliatory act is considered a discrete act that occurs at a particular
20 time, and the fact that some acts fall within the statutory time period does not make timely acts
21 that fall outside the time period"); *cf. Morgan*, 536 U.S. at 113 ("Nor does the statute bar an
22 employee from using the prior acts as background evidence to support a timely claim.").

23 In sum, a claim is time-barred if it arises from an act outside the limitations period, or
24 from the delayed but inevitable consequences of such an act. However, a claim is timely filed if
25 it arises from: (i) a discrete act that itself, having triggered a new limitations period, occurred
26 within that new limitations period; or (ii) a systematic policy of discrimination involving some
27 acts taken within the limitations period. *See Pouncil*, 704 F.3d at 577–81.
28 /////

In moving to dismiss plaintiff's complaint, defendant Bans argues that plaintiff's § 1983 claim against him is time-barred. (Doc. No. 19-2 at 6–7.) Specifically, defendant argues that plaintiff's § 1983 claim accrued when she was placed on administrative leave in February 2014, which was when plaintiff first had reason to know of defendant's alleged constitutional violations. (Doc. Nos. 19-2 at 7; 23 at 2–3.) Defendant Bans argues that any adverse employment action allegedly occurring after February 2014 was an inevitable consequence of plaintiff's suspension, and should not trigger the commencement of a new limitations period. (Doc. No. 19-2 at 8–9.) He also argues that the continuing violation doctrine does not apply here. (*Id.* at 8.) Finally, defendant contends that if the court does not dismiss plaintiff's complaint, it should strike all allegations of the complaint that attempt to invoke liability based on acts allegedly taken before March 9, 2014, two years prior to the filing of plaintiff's complaint. (*Id.* at 8–9.) In opposing defendant's motion to dismiss, plaintiff argues that her complaint in this action was timely filed because her claim accrued when defendant demanded her resignation on March 13, 2014. (Doc. No. 22 at 6–7.)

In her first amended complaint, plaintiff alleges the following adverse employment actions taken by defendant: (i) in February 2014, defendant terminated plaintiff's sister to prevent plaintiff from publicly airing her concerns about the District's policies with respect to student attendance record keeping and reporting, (Doc. No. 12 at 6, ¶ 18); (ii) on February 18, 2014, defendant and other District personnel met with plaintiff and placed her on paid administrative leave, (*Id.* at 7, ¶ 19); and (iii) on March 13, 2014, defendant met with plaintiff privately and asked for her resignation, (*Id.* at 7, ¶ 20). According to these allegations, defendant's meeting with plaintiff on March 13, 2014, represented an independent adverse employment action prompting the commencement of a new limitations period. *See Draper,* 147 F.3d at 1110 ("[T]he date of discharge triggers the limitations period in a constructive discharge case, just as in all other cases of wrongful discharge."); *London*, 644 F.2d at 816 (noting that "[a]bsent special circumstances, a single act by an employer adverse to an employee's interests, such as a discharge, layoff, or failure to transfer or promote, begins the running of the statute of limitations").

1    Accordingly, plaintiff's complaint, presenting a First Amendment retaliation claim based
2 upon alleged adverse employment action taken against her, is not time barred. Defendant's
3 arguments to the contrary are unpersuasive.

4    Defendant Bans contends that plaintiff's claim accrued in February 2014 because that is
5 when plaintiff first became aware of the injury forming the basis of her action. A plaintiff's
6 awareness of injury is indeed relevant in assessing accrual of a claim. *See Fink*, 192 F.3d at 914
7 (noting that § 1983 claims typically accrue when the plaintiff knows, or should know, of the
8 injury that is the basis of the action). However, defendant's argument ignores the well-
9 recognized principle, discussed above, that discrete acts can trigger the accrual of new claims and
10 the commencement of a new limitations period. Even if plaintiff first became aware of a
11 constitutional violation in February 2014, defendant's alleged discrete act of March 13, 2014—
12 asking for her resignation under threat of investigation, ultimate termination and possible criminal
13 prosecution—would set off accrual of a new claim with a corresponding new limitations period.
14 *See Morgan*, 536 U.S. at 113 (finding that the limitations period restarts "even if there was a
15 prior, related past act"); *Ervine*, 753 F.3d at 870 (same).

16    Although defendant suggests that the March 13, 2014 meeting was simply an inevitable
17 consequence of plaintiff's February suspension, in her complaint plaintiff alleges that the action
18 taken on that date was different in kind from the earlier employment actions taken by defendant.
19 Whereas plaintiff's February suspension had been explicitly non-disciplinary, during their March
20 meeting defendant threatened her permanent termination from the District, and caused her to
21 "underst[and] for the first time that [defendant] intended to do whatever he had to do in order to
22 dissuade her from speaking out about the falsified attendance records." (*Id.* at 7–8, ¶ 20.) Taking
23 these allegations as true, as the court is required to do at the motion to dismiss stage, plaintiff's
24 March 13, 2014 meeting with defendant thus represents a new, discrete act on the part of
25 defendant Bans rather than a mere delayed consequence of plaintiff's February 18, 2014
26 suspension.

27    However, to the extent plaintiff's complaint attempts to present retaliation claims based on
28 events outside the limitations period, those claims are time-barred. In this regard, plaintiff has not

9

established any basis for application of the continuing violation doctrine in the present case. Rather, because "the statute of limitations runs separately from each discrete act," plaintiff cannot invoke liability against defendant Bans for acts allegedly taken before March 13, 2014, the date of the latest discrete act alleged by plaintiff that took place within the limitations period. *See RK Ventures, Inc.*, 307 F.3d at 1061; *see also Morgan*, 536 U.S. at 102 ("Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").[3]

Accordingly, defendant's motion to dismiss plaintiff's § 1983 claim on statute of limitations grounds will be denied.

II. **Pleading Sufficiency**

Defendant Bans next argues that plaintiff's retaliation claim is inadequately pled. The argument is unpersuasive.

To plead a First Amendment retaliation claim against a government employer, an employee must allege three elements: (i) that he or she engaged in protected speech; (ii) that the employer took adverse employment action; and (iii) that his or her speech was a substantial or motivating factor for the adverse employment action. *See Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996); *Coomes v. Edmonds School Dist. No. 15*, 816 F.3d 1255, 1259–60 (9th Cir. 2016); *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

An employee's speech is protected under the First Amendment if it addresses "a matter of legitimate public concern," that is, "when it can be fairly considered to relate to any matter of political, social, or other concern to the community." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968); *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1069 (9th Cir. 2012) (citation omitted); *Coszalter*, 320 F.3d at 973. In contrast, speech is not a matter of public concern if it deals with "individual personnel disputes and grievances" such that it is of "no relevance to the

---

[3] Nonetheless, if otherwise admissible, plaintiff may rely on evidence of those prior acts as "background evidence to support" her timely filed claim. *Pouncil*, 704 F.3d at 581 (citing *Morgan*, 536 U.S. at 102); *see also RK Ventures, Inc.*, 307 F.3d at 1062 ("In assessing whether acts occurring within the limitations period are unconstitutional, we may look to pre-limitations period events as evidence of an unconstitutional motive.").

10

public's evaluation of the performance of governmental agencies." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983). The determination of whether an employee's speech deals with an issue of public concern is to be made with reference to "the content, form, and context" of the speech, with content of the speech being the most important factor. *Karl*, 678 F.3d at 1069; *Coszalter*, 320 F.3d at 973–74 (quoting *Allen v. Scribner*, 812 F.2d 426, 430–36 (9th Cir. 1987)).

To show that speech was a substantial or motivating factor for adverse employment action, a plaintiff may introduce evidence demonstrating: (i) proximity in time between protected action and alleged retaliation; (ii) an employer's expression of opposition to plaintiff's speech, either to plaintiff or to others; or (iii) false or pretextual nature of employer's proffered explanations for the adverse employment action. *Coszalter*, 320 F.3d at 977. However, "[b]ecause direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *see also Grosz v. Lassen Community College Dist.*, 360 Fed. Appx. 795, 798 (9th Cir. 2009)[4] (denying a motion to dismiss and finding that plaintiff had sufficiently alleged causation where the complaint "alleged temporal proximity," "pled that [defendant] expressed opposition to [plaintiff's] speech," and "proffered explanations for the adverse employment action that were false and pre-textual"); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (noting that the "[t]iming of action can properly be considered as circumstantial evidence of retaliatory intent").

Here, defendant Bans moves to dismiss the retaliation claim on grounds that plaintiff has inadequately pled a First Amendment violation. (Doc. No. 19-2 at 9–11.) First, defendant argues that plaintiff's complaint fails to adequately allege that she engaged in protected speech since there is no allegation that she communicated any concern about unlawful District practices to persons outside of her work environment. (*Id.* at 11.) Second, defendant contends that in her complaint plaintiff fails to adequately allege that her speech was a substantial or motivating factor for defendant's actions because there is no allegation defendant had knowledge of plaintiff's

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1  alleged concerns regarding student attendance reporting policies.  (Doc. Nos. 19-2 at 9–11; 23 at
2  4–5.)  Plaintiff counters, arguing that her FAC adequately states a retaliation cause of action
3  under § 1983.  (Doc. No. 22 at 8–9.)  Plaintiff contends that her complaint alleges defendant acted
4  with discriminatory intent in demanding plaintiff's resignation on March 13, 2014, and that this is
5  sufficient to withstand defendant's motion to dismiss.  (*Id.* at 9.)

6  In analyzing whether plaintiff has sufficiently alleged that she engaged in protected
7  speech, the court considers the content, form, and context of plaintiff's alleged statements.  The
8  FAC alleges that, beginning in November 2013, plaintiff began expressing her concerns that
9  District supervisors were instructing her to create false and fraudulent school attendance
10 certifications in order to obtain additional federal funding for the District.  (Doc. No. 12 at 4,
11 ¶¶ 12–13.)  Plaintiff's complaint also alleges that she was concerned District attendance
12 certification policies were not "proper or lawful under the applicable federal rules," and that she
13 verbally expressed these concerns "to other employees from the District as well as to her certified
14 bargaining unit representative."  (*Id.* at 4, ¶ 13.)  Thus, contrary to defendant's argument,
15 plaintiff's FAC does allege that she engaged in speech concerning unlawful conduct and potential
16 fraudulent practices by District personnel and that her speech was directed to those outside her
17 immediate work environment.

18 Because plaintiff's speech related to "potential wrongdoing or breach of public trust" by
19 public employees, it also involved a matter of public concern, and is protected under the First
20 Amendment.  *Connick v. Myers*, 461 U.S. 138, 148 (1983); *see Thomas v. City of Beaverton*, 379
21 F.3d 802, 804 (9th Cir. 2004) ("Unlawful conduct by a government employee or illegal activity
22 within a government agency is a matter of public concern"); *Roth v. Veteran's Admin.*, 856 F.2d
23 1401, 1406 (9th Cir. 1988), *overruled on other grounds by Blantz v. California Dept. of*
24 *Corrections and Rehabilitation*, 727 F.3d 917 (9th Cir. 2013)  (finding that an employee's reports
25 of safety regulation violations, unethical conduct, misuse of public funds and mismanagement
26 constituted speech of public concern); *see also Ceballos v. Garcetti*, 361 F.3d 1174, 1179 (9th
27 Cir. 2004) (finding that a plaintiff engaged in protected speech when he alleged criminal
28 wrongdoing by a police officer even though those allegations proved to be erroneous).  Even if

12

plaintiff's statements were addressed only to coworkers, that would not change this conclusion. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1069 (9th Cir. 2013) (noting that whether or not a public employee expresses his views inside his office is not dispositive as to the question of whether plaintiff's speech is protected); *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009) (emphasizing that "[t]he 'content' element is the greatest single factor in the *Connick* inquiry").

Plaintiff's complaint also adequately alleges that her protected speech was a substantial or motivating factor for the alleged adverse employment action taken by defendant Bans against her. In this regard, plaintiff's complaint alleges that she began to express her concerns about the District attendance certification policies in November of 2013, and that she began experiencing adverse employment action soon thereafter. (Doc. No. 12 at 5–6, ¶¶ 13–16.) The complaint specifically alleges that defendant's actions—terminating the employment of plaintiff's sister, meeting privately with plaintiff in January and February 2014, and requesting plaintiff's resignation in March 2014—were prompted by plaintiff's "expressions of concern . . . regarding the attendance record keeping," and by the fact that plaintiff had acquired an attendance document from Cecil attendance staff members in February 2014. (*Id.* at 6, ¶ 17.) In addition, plaintiff's complaint alleges that defendant Bans provided pretextual explanations for the adverse employment action, giving "false accusations that [plaintiff] had engaged in some sort of misconduct that he implied was related to the false certification of attendance." (*Id.* at 8, ¶¶ 21–22.) Given the alleged chronology of events and alleged pretextual nature of defendant's explanations for the adverse employment action taken, plaintiff has adequately pled facts supporting the causation element with respect to her First Amendment retaliation claim. *See Watison*, 668 F.3d at 1114 (noting that "allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal"); *see also Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1177 (E.D. Cal. 2005) (finding that plaintiff had adequately pled the causation element of a First Amendment retaliation claim by alleging that "[plaintiff] was denied each and every promotion as a result of [defendants'] actions, and in retaliation").

/////

Therefore, defendant's motion to dismiss plaintiff's retaliation claim on the grounds that it is inadequately pled will be denied.

CONCLUSION

For all the reasons stated above, defendant's motion to dismiss (Doc. No. 19) is denied.

IT IS SO ORDERED.

Dated: __**November 17, 2016**__     _____
                                       UNITED STATES DISTRICT JUDGE